Case Numbers 1836-98 and 1837-05 Lewis Malcmacher et al. v. James Jesse Oral Argument not to Please support. My name is David Campbell. I'm here on behalf of the appellants, the American Academy of Facial Aesthetics and Lewis Malcmacher. I'd like to reserve three minutes for rebuttal. Thank you, sir. The issue on appeal, there's two issues and both claims arise out of abusive process and malicious prosecution. We're going to focus on the summary judgment decision that we appealed as to our claims. This case arises in California. It arises between two dentists and an organization, the AAFE, which provides seminars to dentists and other medical professionals throughout the United States. At issue in this case are seminars that the AAFE provides not only in California but in any other state that permits it, training as to the use of Botox and other dermal fillers on patients. And in this case, it was relevant to the dentistry program in California. Relevant to this, Dr. Jesse has testified that he had provided Botox to his patients in his California dental practice before any of the issues in this case, during the issues in this case, and currently. He's always believed that it's been lawful for dentists in California to offer these services to his patients. He's kept abreast of the law and he always believed that to be the case. Dr. Jesse performed work on behalf of the AAFE pursuant to written contracts and the written contracts provided that he was an independent contractor, provided that Ohio law would apply to any disputes, set forth the reimbursements that Dr. Jesse was entitled to, and then most importantly stated that if there was any type of change to the contract that it had to be in writing and signed by the parties. And what's your strongest claim against Jesse here? We've got a lot of claims and cross-claims and what are you leading off with your best claim that the district court heard in denying you relief? Your Honor, we have two claims, malicious prosecution and abusive process. I believe both claims are equally strong based on the evidence. The malicious prosecution, if we look at Dr. Jesse's testimony in this lawsuit, when he was deposed, he verified that the California lawsuit had no probable cause. In fact, that every one of the claims lacked a factual basis and a legal basis. In this lawsuit, he testified that there was no fraud, that they had a joint representation when the California Dental Board raised the issue that the joint representation required the two to have a unity of interest and he admitted that they did have a unity of interest in front of the Dental Board. After the Dental Board dispute was concluded, that's when the California litigation at issue in this case was filed. Did the California litigation, did they make a finding about the probable cause that you're claiming here? Your Honor, we filed several motions in California. We never filed a Rule 11 motion. We never filed any type of abusive process or malicious prosecution. We proceeded through, I believe we sought to transfer venue because the Ohio law applied to the contract. We then filed a motion for summary judgment once discovery was concluded. One, two, three, four, five of the claims were judgment was entered in favor of the AFE and Dr. Malsmacher at that point. Then we proceeded to trial on a fraudulent concealment, a breach of contract, and some related contract claims. When the verdict came out in favor of the AFE and Dr. Malsmacher, at that point they made the decision no appeal was filed by either side and they looked at their rights and they filed an Ohio lawsuit under California law for abusive process and malicious prosecution. But the district court found there was race judicata here, right? I would say that that is the primary basis for the district court's decision and I think that basis is legally unsound because these claims, Judge Nugent is a very able district court judge. He very much likes trials. I've been in trials with him and I agree that trials in general conclude the matter aside from appeals and the trials are resolutions of disputes between the parties. Given all of that, zero in on the error. The error is, number one, that these two claims, by a matter of law, are not subject to race judicata. Malicious prosecution, abusive process. What is it? Abusive process is the second strong claim of yours, you're saying? We have two claims and both of those two claims and the law is very clear that neither of them. They both require, for example, malicious prosecution. It required us, our first element, to prove that the California lawsuit terminated in our favor. So how you could say that I have to take a lawsuit to conclusion, I have to win, and then somehow by winning that lawsuit it's race judicata. I mean, the two things just simply are not legally tenable. And so from the race judicata standpoint, we believe it's just clear legal error as to it. For example, on the abusive process, we had to prove that the declaration, we asserted that the declaration that Dr. Jesse provided in opposition to the summary judgment, and again at trial, was false. And he knew it was false. And that was the act that supported our willful act for abusive process. The district court's decision stated that that declaration had been reviewed by the district court in California and that he was not going to re-litigate, Judge Nugent was not going to re-litigate the declaration. Well, again, your honors, that is the abusive process issue. And the abusive process issue is for the district court, in this case Judge Nugent, to review the declaration, to review- What was the false declaration that he was supposed to make? The false declaration was that in the deposition in California, Dr. Jesse testified unambiguously that, under oath, that the alleged promise to pay his fees, it was just simply a gift. Had to do with the attorney fees and the state administrative proceedings, right? Yes. And there was no quid pro quo. I asked him about consideration. Do you understand consideration? I gave him a car example. I buy your car. I offer you money. And he said this was just simply, he said he would do it. I did nothing in return. When summary judgment was filed, in order to avoid summary judgments, he then argued that the promise was based on, I entered into the joint relationship or joint defense in return for the promise to pay my fees. Was he arguing that there was some forbearance of some sort as the consideration for that, for his action? Yes. That's what he asserted in his declaration. But what exactly was he forbearing? Well, we don't believe there was forbearance. No, you don't. Because he always could have stopped the joint representation. He testified that there was no forbearance. And we believe that, yes, summary judgment should have been granted. But in California, on that claim, we shouldn't have had to go through a trial. But the key point is that today, Dr. Jesse's testimony confirms that these two individuals are friends, that he believed the seminar was lawful at the time he made it. It was lawful during the course of the dental board proceedings. It was lawful at all times through today. In the California lawsuit, after having a joint defense and having a unity of interest, he turned and took a very different stance. If you look at the California complaint and you look at his testimony in this case, for example, intentional misrepresentation. In this case, he testified unambiguously. That, I knew all of the facts related to the dental board. I agreed with Dr. Malsmacher on the dental board dispute. Everything we did was lawful, and it was inappropriate for the dental board to be challenging us. My seminar was lawful. The California lawsuit took a very different stance. The California lawsuit alleged that Dr. Malsmacher hid facts from him. That Dr. Malsmacher presented a seminar that violated California law and had him present it. In direct contradiction to the joint representation, and more importantly, in direct contradiction to his deposition testimony in this case. Was the thing that made it false, the use of live subjects, or was it just that the statute made that type of seminar allegedly unlawful? Actually, the dental board had just issued a regulation that stated that the dentist, as long as they weren't doing it just to make you look pretty for facial aesthetics, if it was for a medical reason that a dentist, just like a doctor, could use Botox and other fillers. Our seminar, and Dr. Jesse agrees, was medically related. He was testifying that if you had migraines or if you had issues with your jaw, here's how to use the Botox for your patients. In the lawsuit in California, he alleged 180 degrees differently. He alleged that the seminar was unlawful. The live injections come up in our counterclaim. The counterclaims were asserted because of the fact that one of the issues in the California dental board issue was that they had an undercover investigator. That undercover investigator believed that Dr. Jesse had inappropriately performed a live injection. The issue with that, there was live injections being performed, but you have to have a patient. To make it medically necessary, you have to have a patient. As the instructor, he didn't have a patient present. And so that's where the dental board had the issue, so we filed a counterclaim. In this case, and I'm surprised we have an appeal on it, because in this case, it was relevant to summary judgment. I asked Dr. Jesse in his deposition about his counterclaims. In this lawsuit, he testified on pages 10 and 11 that there was no action since the judgment in California that the AFE or Dr. Malsmunker took unlawfully against him in direct contradiction to his intentional interference claim. Are we talking about a counterclaim in California or the one in Ohio? He filed, again, he filed counterclaims, and that's their cross-appeal. He filed counterclaims in Ohio. His deposition testimony, though, has confirmed that there is no fact supporting those counterclaims yet. We are still pursuing those counterclaims here. And so from our standpoint, this is real simple. Our standpoint is that the judge should not have applied res judicata. Res judicata does not apply to abusive process and malicious prosecution as a matter of law, and the authorities are clear and uniform on that. Number two, they did not meet their summary judgment burden. Just as in this appellate brief, they drop a footnote in this appellate brief stating that the facts aren't in dispute and they're not going to cite to the record. That's much the same at the district court level. They did not cite to anything they just attached. It's well established that the initial burden has to be on them to prove that there's no genuine issue of material fact. Then the burden shifts to us. We met that burden, but that burden never shifted as to it. And then finally, as to the summary judgment, we do believe that if you look at Dr. Jesse's testimony in this case where he confirms that there was no fraud, that our seminar was lawful, that the contract required assigned writing in order to have the payment of fees, and that the contract most importantly did not require the AFE to reimburse him for his legal fees by its very terms, admitted all those facts, he nonetheless brought a lawsuit in California that had no probable cause, that alleged fraud, that alleged our seminar was unlawful, alleged damages, emotional harm, punitive damages, and went all the way to the jury alleging punitive damages and emotional distress. And so from our standpoint, there is without question that as to both of our claims, summary judgments should have been denied. There was no probable cause to bring these claims. There was clear malice. This was somebody bringing a claim only to force the AFE to pay something that they weren't required to. The law is clear as to venue choice, the choice of law. The law is clear as to the lack of probable cause. We believe with the false declaration and the facts that the summary judgment should be reversed. Thank you. You'll have your rebuttal time. You're from the Appellee. May it please the Court. Good morning. Good morning. My name is Craig Marvany of the Cleveland Law Firm of Walter Haverfield, and I represent the cross-appellant appellee, in this case, Dr. James Jesse. Two district court judges have looked at Dr. Maltzmacher's various claims and AAFE. I'm going to call them Maltzmacher for purposes of the argument, if I may, and has thrown them out. In the California case, Judge Stephen Walter looked at the counterclaims that were filed by that case by Dr. Maltzmacher and AAFE and threw them out. Threw them out on summary judgment in May of 2016 in court, in open court, and granted Dr. Jesse's motion for summary judgment, throwing out those counterclaims. Well, was the issue of malicious prosecution and abuse of process raised in California? No, sir, it was not. It was raised here in Ohio. But it could have been raised, is that what you're saying? Well, actually not. The underlying facts, the underlying bases of what they claim today and have claimed in Ohio as being the bases of their abuse of process and malicious prosecution case were in part thrown out in California. And I say in part because the abuse of process and malicious prosecution, which I anticipate is where you're going, Your Honor, is something that derives from the later activity of the whole case in California, failing by and not succeeding by Dr. Jesse. But that case in California went to the jury. And in that case, Your Honor, and Your Honor, we have a situation in Judge Gibbons by audio. We have a situation where Judge Walter heard all the eight different claims. There was a motion that was developed by Dr. Maltzmacher and AAFE to dismiss the plaintiff's claims. That motion came up. It was a motion for summary judgment. It was ruled upon by Judge Walter. And Judge Walter, as Mr. Campbell noted, dismissed out five of the eight claims. The last three claims, fraud, there was a breach of contract and a breach of the duty of fair dealing and good faith. Those three went to the jury. A directed verdict, Judge Walter in California took two of those, the duty of fair dealing breach and the breach of contract, and said they're not going to go to the jury. But the judge said, and it's in the trial transcript, which is part of the record, the judge said, and this is from the California case that became part of the record in Ohio. And the judge there, Judge Walter said, I'm going to let this go to the jury. I think there's a basis for the jury to find, based upon what we've heard so far today, at the end of all the testimony, at the end of all the evidence, that I'm going to let this go to the jury. And he so instructed the jury on the law dealing with fraud. And, yes, it was a consideration issue that apparently was the hang-up in that case. Now, Judge Nugent, later now in Ohio, under the abuse of process and malicious prosecution complaint brought by Dr. Maltzmacher and AAFE here in Ohio, came back and looked at it and said, this is race judicata. There is law that says that abuse of process and malicious prosecution can be dismissed due to race judicata, and I'd cite the court to the Lewis case.  I believe it is. We have it published off the record, and we have it cited in our brief as well, our second brief in this court. And in that case, Your Honor, the judges here of this court threw out a case and affirmed a district court's decision saying that race judicata applied to a malicious prosecution and abuse of process case. So the suggestion that it's contrary to law is just not apt at all. And, in fact, Judge Nugent followed the law here in Ohio and in this court and said that the abuse of process and malicious prosecution claims, as he found them, that were raised in Ohio as a result of the California litigation were race judicata, and it was covered by race judicata, and in that instance, the judge in June of last year dismissed out the plaintiff's case on summary judgment and properly did so when we asked the court to affirm that ruling. If I may, though, we also talked about, and we heard discussion here today about the counterclaims, the amended counterclaims of Dr. Jessie as it relates to the Ohio case. There were three counterclaims that were brought by Dr. Jessie. One was abuse of process, one was malicious prosecution, and the third was tortious interference with business relationships and prospective business relationships. That case was dismissed. Those three counterclaims were dismissed by Judge Nugent in December of 2017 on plaintiff's second motion for judgment on the pleadings. Now, there's a significant point in the process of a case, as you both understand and as I know Judge Gibbons would understand, because all of you have served as district judges in your careers, and as you look at what happened in this case, that case was dismissed. Those counterclaims were dismissed before discovery was really able to move forward and be undertaken and proven via expert witness testimony in the case below. And so as a result, it's not that Judge Nugent erred by holding race judicata or anything else in that decision. He didn't give us the chance to prove our counterclaims. Now, fundamentally, before we go any further, I'm authorized to talk to the court about Dr. Jesse's position, which is if this case and if this court deems fit to dismiss out and uphold Judge Nugent's ruling on the main case brought by Maltzmacher and AAFE, Dr. Jesse wants this over with. That would be the end of the case if we affirm the district court, but if not, then you've got your counterclaims floating around. That's correct, Your Honor. And in that case, if the court is to see fit to overturn the district court on Dr. Maltzmacher and AAFE's claims, well, then we would ask that the court overturn the district court as it relates to Dr. Jesse's amended counterclaims as well. However, if the court is to decide, in its wisdom, to uphold the district court as to Maltzmacher and AAFE's claims and dismiss them out, then Jesse wants this over with and wants no further pursuit of anything. But if it is to go, then Jesse wants his chance to prove that he does have a case and can move forward beyond a simple motion to dismiss slash motion for judgment on the pleadings. Is it a malicious prosecution and abusive process that Jesse has in this case? Jesse has raised those. Similar to what the other side has. That is correct. And the basis of those, which were pled out in the amended counterclaims, was that the underlying case in California moved forward by Maltzmacher and AAFE on their counterclaims. Despite the fact that in January of 2016, deposition by Monica Boniardi, who was the model, the person supposedly injected, she testified, I was never injected by the Botox at that particular 2012 program that became the subject of the California Board of Dentistry case. And she testified, no, it was mocked up. He acted as if he was, so to show all the students there, the dentists attending to learn how to use Botox, what it looks like and how you would do the injection. But it was never an injection. And yet Dr. Maltzmacher and AAFE continued to pursue their case in federal court knowing that she was never injected by her own testimony. And this is the model. This isn't Dr. Jesse. It's the person who purportedly was injected. So in light of your client's desire, condition, or dependent upon how the case goes, have you all sought post the appeal trying to resolve everything with certainty outside of the court? We did participate, Your Honor, in the Sixth Circuit Judicial Council's efforts to attain a mediation, and that was not successful. Thank you. You may continue with your argument. Thank you very much. So as a result of where we are, an abuse of process claim suggests that there was a reasonable basis to bring a claim. And without conceding the fact on the malicious prosecution side, which says there was no reasonable basis to bring the claim, in the abuse of process argument, there has to be a perversion at some point of the process, at which point the person accused of abuse of process has so perverted, with an ulterior motive, that process as to render it abusive. And in this case, Dr. Jesse properly pled in his counterclaim that there was this injection allegation. Boniardi's testimony was very clear. She was never up close and personal. She was never injected. And Dr. Maltzmacher knew that in California and didn't withdraw his claims and continued to pursue them. Why? Because he wanted to get back at Dr. Jesse for abandoning him, if you will, abandoning their common defense before the California Board of Dentistry. Did that issue come up in the trial in California about the fact that the woman didn't even have the Botox? Yes. It was part of the California case. It was part of the trial in California. And that was all before Judge Wilson knew that, and Judge Wilson had in front of him and presumably as part of his rulings rendered that as part of his decisions. And so in that sense, Dr. Maltzmacher and presumably AAFE as well, because they're basically one and the same, came through and knew that and yet still pursued their claims. Now, there were no motions for sanctions, and Mr. Campbell is correct, there was no motion under Rule 11 or any other motions in California before Judge Wilson. In fact, the case was rendered by verdict in November on the 30th of 2016, and the only reason why it took until February of 2017 to render the final judgment was a motion for costs, and that was it. And it was over with. And then Judge Nugent got the case. I have a tendency to call priests, Your Honor, sometimes, and judges. Anyway, as we move forward, and I apologize to the court, Judge Nugent had a chance to look at this case and said, this was Judge Wilson's case in California. It shouldn't be here. It's res judicata, and he properly so ruled in his decision in June of 2017. Now, when we look at where we go, we cannot live in a world, we cannot have these legal systems that we have in a situation where judges are being second-guessed and re-litigated and re-litigated. It's as if a super ball was dropped on the floor and bounced up and kept on bouncing, and every bounce is a new version of new litigation, again and again, second-guessing Judge Wilson, second-guessing Judge Nugent. And indeed, looking at where this law should be and where this case should be, it was in Judge Wilson's court, and there it was resolved, and it was never appealed from in California, never appealed from in California. It was brought as an abusive process, a militia prosecution case in Ohio, moved to federal court, and here we are. And so as a result of where we are, we would ask that the court uphold the district court in its entirety, and if the court here so chooses not to uphold the district court in its entirety as it relates to Dr. Maltzmacher and AAFE's claims, we would ask that it also overturn the district court and let Dr. Jesse complete his discovery and proofs as it relates to his abusive process, militia prosecution, and most of all, tortious interference with business relationships claim. Your Honors, thank you very much for your time this morning, and although I have a minute left, I was hoping to reserve that for rebuttal, but I understand the court does not permit cross-appellants to participate in rebuttal. That's correct. Thank you. Thank you very much, and have a great day. Thank you, Honors. I'll be brief. First of all, as to the res judicata argument, it's very clear from the law, and I think the elements of the malicious prosecution make clear that the first element, the California lawsuit had to have terminated in our favor, and it did, and clearly there's no res judicata. On pages 48 and 49 of our first brief, we cite Ohio and law throughout the country that states that a malicious prosecution claim does not accrue until the original lawsuit in favor of the plaintiff has been concluded, same as abusive process. So number one, as to res judicata, as a matter of law, it's inappropriate. Number two, as to our claims, we believe the evidence is very clear. We didn't hear any contrary arguments as to Dr. Jesse's testimony. Dr. Jesse confirms in this deposition, and we cite it extensively, that he had no probable cause to bring that California lawsuit, that he pursued that California lawsuit all the way to a jury trial, asserting fraud, seeking emotional distress, seeking punitive damages, and attempting to get the largest payment that he could out of this company, admitting he had no probable cause to do it. Had this counsel, and there was two separate counsel, had this counsel seen his deposition testimony, in this case, I am confident that that lawsuit would not have been filed. But in this case, it needs to be pointed out, there was no third-party claim saying that the attorney acted inappropriately, did not act on his behalf. He stated the attorneys were on his behalf. This lawsuit was without probable cause. It was pursued to a jury. Why didn't we appeal? Because we won. When you win, you don't have to appeal a case. Why didn't we file Rule 11 at that time and seek our fees? Because we made the litigation decision that we had a malicious prosecution, abusive process claims that could be asserted after if there was no appeal, versus continuing that litigation and potential having an appeal. We had that right as to it. I could see an issue preclusion or res judicata had we sought Rule 11 sanctions or had we alleged it was a frivolous action in California and the district court reviewed those issues and concluded that we failed on the merits, then I could see issue preclusion or maybe res judicata. In this case, as counsel has confirmed, it went all the way to the jury. There was never a decision as to whether there was probable cause as to that, and by the very fact, the mere fact that a summary judgment was denied or claims that could go to trial, then you could never bring a malicious prosecution or abusive process claims. These claims do not accrue until we won at that point. So from our standpoint, we ask you to review Dr. Jesse's testimony that we cite extensively and his testimony confirms that there was absolutely no probable cause to bring that California lawsuit. It was brought for malicious purpose, and that declaration is clear evidence that he was doing anything possible to get a chance at that jury to see if he could recover damages far in excess of anything that he had incurred. Thank you very much. Thank you, sir. The matter is submitted, and in due time and after careful consideration, we'll issue our ruling. Thank you.